UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

James O'CALLAGHAN,

<div style="float:right">

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED: __ 3/28/2013    │
└─────────────────────────────┘
```

</div>

                                        Plaintiff,

        -against-

THE NEW YORK STOCK EXCHANGE,
Duncan NIEDERHAUER, Virginia J.
HARNISCH, W. Kwame ANTHONY, Tom
BRUNO, Mike DALTON, Vincent MURPHY,

                                        Defendants.
------------------------------------------------------------------X

12-CV-07247 (AJN)(SN)

REPORT AND
RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge:

TO THE HONORABLE ALISON J. NATHAN:

*Pro se* plaintiff James O'Callaghan has filed this case against the New York Stock

Exchange ("NYSE") and six individuals employed by the NYSE in various capacities: Duncan

Niederauer, Virginia J. Harnisch, W. Kwame Anthony, Tom Bruno, Mike Dalton, and Vincent

Murphy. O'Callaghan alleges that defendants violated the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, through a coordinated scheme of insider

trading between 2001 and 2009. He further alleges that disciplinary actions taken against him at

the NYSE between 2005 and 2010 were, generally, a product of a conspiracy among the

defendants to cover up the illegal trading. Defendants have moved to dismiss the action pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

        As discussed further below, O'Callaghan has already brought a substantially similar case

in this Court, which was dismissed in part for lack of subject matter jurisdiction and in part on

immunity grounds. That prior case has preclusive effect on the claims brought in this action,

even though these claims are brought under RICO. And, even if the prior action does not bar this

action, O'Callaghan's RICO claims – over which the Court plainly has jurisdiction – fail to state

a claim and can be dismissed on that independent ground. Finally, to the extent a liberal reading of the complaint leaves any claims regarding O'Callaghan's discipline unaddressed by a dismissal on claim or issue preclusion and for failure to state a claim, such claims would be dismissible on immunity grounds. Accordingly, I recommend that defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) be GRANTED in part and DENIED in part, and that the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) be GRANTED in full.

In light of O'Callaghan's litigation history, I further recommend enjoining O'Callaghan from filing any new litigation in this Court without first obtaining leave from a judicial officer. I do not, however, believe O'Callaghan should be required to pay defendants' attorneys' fees and costs and therefore recommend denying this application for relief.

In recommending dismissal of this case, the Court provides a longer discussion than would otherwise be warranted in the interests of achieving finality in the drawn-out litigation history between the parties.

## BACKGROUND

The following facts are taken from O'Callaghan's complaint and documents of which the Court may take judicial notice: namely, the previous cases associated with O'Callaghan in the New York Stock Exchange ("NYSE") and the Securities and Exchange Commission ("SEC"), and the August 14, 2012 Memorandum and Order by the Honorable Naomi Reice Buchwald. O'Callaghan v. N.Y. Stock Exch., 11 Civ. 6331 (NRB), 2012 WL 3955968 (S.D.N.Y. Aug. 15, 2012). See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.")

(internal quotation omitted); <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008) <u>aff'd,</u> 130 S. Ct. 2869 (2010) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings.") (citation omitted).

## I.    The Parties

Plaintiff James O'Callaghan, a former stock broker, entered the securities industry in 1969 and became a member of the NYSE in 1973. <u>In re James Gerard O'Callaghan</u>, 2005 WL 5600965 (Nov. 2, 2005). He formed an independent floor brokerage firm in 1997, which he converted into a New York limited liability company called J&D Securities in 2003. <u>Id.</u> As an independent floor broker, he executed orders initiated by other NYSE members and was granted investment discretion over an account belonging to LDL Trading, Inc. (the "LDL Account"). O'Callaghan's trading in this account triggered alerts in the NYSE's surveillance systems, which led to an investigation and subsequent disciplinary proceedings. These disciplinary proceedings are discussed in more detail below.

Defendant New York Stock Exchange ("NYSE") is a self-regulatory organization that operates the New York Stock Exchange, an equities market, and is subject to regulatory oversight by the SEC. Under the Securities Exchange Act of 1934 (the "Exchange Act"), the NYSE is responsible for ensuring that its members and other persons associated with it abide by federal securities laws and NYSE rules. 15 U.S.C. § 78f(b)(1), (d). Defendant Duncan Niederauer is the Chief Executive Officer of NYSE Euronext, a multinational financial services corporation that is the product of a 2007 merger between the NYSE and Euronext, a European electronic stock exchange. Niederhauer has been the Chief Executive Officer of NYSE Euronext since December 2007.

Defendants Virginia J. Harnisch and W. Kwame Anthony are attorneys for NYSE

Regulation, Inc. ("NYSE Regulation"), an independent non-profit corporation that is responsible

for enforcing compliance by NYSE members with exchange rules and applicable federal

securities requirements. Harnisch and Anthony appeared before the SEC on behalf of NYSE

Regulation at O'Callaghan's disciplinary appeals on May 20, 2008 and December 10,

2009. They also appeared before the Hearing Board on behalf of NYSE Regulation at

O'Callaghan's March 11, 2010 hearing. Defendant Tom Bruno was an NYSE attorney who

supervised the investigation against O'Callaghan in 2005 and acted as an advisor during the

subsequent proceedings. Defendant Mike Dalton was an NYSE investigator who investigated

O'Callaghan and testified at O'Callaghan's first disciplinary hearing on November 2, 2005.

Defendant Vincent Murphy was an NYSE Hearing Officer who presided over that hearing.

## II.    Prior Proceedings

### A.  Disciplinary Actions

Pursuant to Section 11(a) and Rule 11a-1 of the Exchange Act, floor brokers are

prohibited from initiating or effecting a transaction for an account over which they exercise

investment discretion without meeting the requirements of a statutory exemption. 15 U.S.C. §

78k(a); 17 C.F.R. § 240.11a-1; see also NYSE Rules 90(a) & 95(a) (prohibiting floor brokers

from engaging in proprietary and discretionary trading); NYSE Rule 476(a)(6) (prohibiting

conduct inconsistent with just and equitable principles of trade). On October 21, 2001,

O'Callaghan was notified that the NYSE had begun an investigation into his trading behavior.  In

re James Gerard O'Callaghan, 2005 WL 5600965 (Nov. 2, 2005). After a hearing, the NYSE

found that, between December 2000 and October 2001, O'Callaghan had executed trades for the

4

LDL account without authorization from the company in violation of the Exchange Act. Id. The NYSE censured O'Callaghan, fined him $30,000, and suspended him for three months. Id.

O'Callaghan appealed this decision to the SEC, which affirmed the findings but remanded to the NYSE for reconsideration of the sanctions. In re James Gerard O'Callaghan, 2008 WL 2117162 (May 20, 2008). On remand, the NYSE affirmed its original sanctions and the SEC thereafter affirmed. In re James Gerard O'Callaghan, 2009 WL 4731651 (Dec. 10, 2009).

During the same period, NYSE Regulation investigated J&D Securities' compliance with federal securities law. The investigation revealed that, between 2001 and 2006, O'Callaghan and his firm, J&D Securities, failed to comply with numerous securities regulations, including disclosure of excess net capital withdrawals. J & D Securities, LLC, Member, 2008 WL 2389210 (Apr. 16, 2008). An NYSE Hearing Officer found O'Callaghan and J&D Securities guilty of, among other offenses, withdrawing in excess of 30 percent of the net capital of the firm during the period between 2000 and 2006 without giving notice to the NYSE or the SEC, a violation of Rule 15c3-1(e)(1)(i) of the Exchange Act. Id. at 2. In addition, the NYSE found that O'Callaghan had failed to supervise and control the firm's employees to ensure compliance with securities laws and regulations. Id. The firm and O'Callaghan were found jointly and severally liable, and a $75,000 fine was imposed. Id. at 9. O'Callaghan did not appeal this decision.

By 2010, O'Callaghan had not paid either of the fines from his two prior disciplinary proceedings and was charged with violation of NYSE Rule 476(a)(7) (mandating payment of fines imposed by the NYSE Hearing Board). In a third disciplinary proceeding, a Hearing Officer ordered O'Callaghan to pay the fines on pain of permanent bar from the securities industry if he failed to pay within 30 days. James Gerard O'Callaghan, 2010 WL 1419350 (Mar.

11, 2010). O'Callaghan neither paid the fines nor appealed the decision.  As a result, the findings of guilt and the penalties became final.

**B.  State and Federal Court Cases**

In 2011, O'Callaghan filed two suits against the lawyers who represented him at his first disciplinary hearings. Both cases were dismissed for failure to state a claim. O'Callaghan v. Brunelle,  923 N.Y.S.2d 89 (1st Dep't 2011), leave to appeal denied, 18 N.Y.3d 804 (2012); O'Callaghan v. Brunelle, Index No. 112881/2011 (Sup. Ct. N.Y. County, May 9, 2012) (Henkin Aff. at Exh. B). O'Callaghan also filed suits against the lawyers who represented him at his second disciplinary hearing. One case was filed in and dismissed by the New York Supreme Court.  O'Callaghan v. Goodman, Index No. 108746/2011 (N.Y. Sup. Ct. Aug. 17, 2012) (Henkin Aff. at Exh. C). The other was filed in federal court and was dismissed for lack of subject matter jurisdiction on September 14, 2012. See Order of Dismissal, O'Callaghan v. Goodman, 12 Civ. 5771 (WHP), (S.D.N.Y. Sep. 14, 2012) (Henkin Aff. at Exh. D).

O'Callaghan also filed two cases against six of the seven current defendants in New York Supreme Court on August 22, 2011 and September 9, 2011. Both cases were removed by the defendants to this Court. Because they alleged essentially identical facts against the same defendants, Judge Buchwald consolidated the cases on March 19, 2012. O'Callaghan v. N.Y. Stock Exch., 11 Civ. 6331 (NRB), 2012 WL 3955968 (S.D.N.Y. Aug. 15, 2012) (hereinafter "O'Callaghan I"). O'Callaghan claimed that the defendants, who were attorneys, investigators and a manager at the NYSE, lied throughout the disciplinary hearings, which resulted in improper sanctions. He alleged a violation of due process and state law claims of defamation, fraud, and violations of state securities law.

The case was dismissed on August 15, 2012. The Court held that it lacked jurisdiction to review the disciplinary proceedings, citing the SEC's scheme for enforcement procedures: after internal appeal to the NYSE, see NYSE Rule 476(b), (f), and an appeal to the SEC, see 15 U.S.C. § 78s(d), the exclusive route for further review is directly to the United States Courts of Appeal, see 15 U.S.C. § 78y(a)(1).

The Court did, however, review the merits of O'Callaghan's claim that suppression of evidence and delays in providing notice of the charges violated his federal due process rights. The Court found that the NYSE, in representing the SEC in the prosecution of a securities action, is granted "absolute immunity for claims arising out of the performance of its federally-mandated conduct of disciplinary proceedings." O'Callaghan I, at *6 (quoting D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 104 (2d Cir. 2001)). The Court found that this immunity extended to four of the NYSE defendants who were engaged in prosecutorial activities.

To evaluate the immunity of the remaining two defendants who were involved in investigative activities, the Court held that the extent of immunity depends on whether the alleged violation is constitutional in nature and one that a reasonable person would have known violated a clearly established right. O'Callaghan I, at *6. The Court found that O'Callaghan failed to meet this standard in any of the facts alleged: suppression of exculpatory evidence; lack of timely notice of the investigation; and failure of a hearing officer to recuse himself. Instead, the Court found that any deficiency in the NYSE proceeding would have been cured at the SEC level; that there is no constitutional right to notice of the NYSE's investigatory activities; and

7

that the hearing officer, who was not named as a defendant in that case but is in this action, was not required to recuse himself as O'Callaghan had suggested. <u>O'Callaghan I</u>, at *7.[1]

## III.   This Action

O'Callaghan filed this complaint on September 26, 2012. Because he proceeds *pro se*, letters he submitted to the Court are considered part of the complaint to the extent that they clarify or supplement the allegations. <u>Boguslavsky v. Kaplan</u>, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.") (citation omitted); <u>Loccenitt v. City of New York</u>, 11 Civ. 5651 (PAC)(HBP), 2012 WL 3822213, at *2 (S.D.N.Y. Sept. 4, 2012) (adopting magistrate judge's recommendation to construe plaintiff's new factual allegations in opposition brief as amending complaint); <u>Philippeaux v. United States</u>, 10 Civ. 6143 (NRB), 2011 WL 4472064, at *4 (S.D.N.Y. Sept. 27, 2011) (considering new claims and facts pled by *pro se* plaintiff in opposition to motion to dismiss).

O'Callaghan's complaint asserts RICO claims that can generally be divided into three categories. First, O'Callaghan alleges that there was a "massive cover-up" of illegal activities committed by NYSE Floor Brokers between October 2001 and May 2009. (Compl. at 3.) O'Callaghan alleges that the Member Trading Desks gave inside information from Mutual Fund Trading Desks to NYSE floor members in exchange for cash. <u>Id.</u> In his opposition to the defendants' motion to dismiss,[2] O'Callaghan supplements his complaint to include that the

---

[1] The Court declined to review the purely state law claims of fraud and defamation on the grounds that "there is no independent basis on which to remove those claims." <u>O'Callaghan I</u>, at *4.

[2] In response to the defendants' Motion to Dismiss, O'Callaghan filed a statement entitled "Preliminary Statement." (Docket No. 20.) The Court will consider this, and refer to it as, the Opposition to the Motion to Dismiss ("Pl. Opp. Br.").

brokers violated the Securities Act of 1933, the Exchange Act, and the Blue Sky Laws "of every state" by excluding certain "information" from the NYSE Euronext Prospectus. (Pl. Opp. Br. at 4.) O'Callaghan claims that this constituted a RICO violation against the public and the stockholders of NYSE Euronext. (Id. at 3.)

Second, O'Callaghan alleges that the "Group," which he defines as "all members of the NYSE," (Compl. at 4), "acted jointly in orchestrating this scheme" to find him guilty of illegal floor trading through "a series of unbelievable, malicious and fraudulent memoranda" that formed the basis of his 2005 disciplinary proceeding. (Id. at 3.) It is unclear whether O'Callaghan argues that this coordinated action amounts to a separate RICO violation or whether he presents it as evidence of a cover-up of the first alleged RICO violation, that is, the insider trading scheme. In any event, O'Callaghan challenges the way the disciplinary proceedings against him were conducted. He claims that Joseph Pilovsky (a defendant in O'Callaghan I who is not named in this case) and defendant Mike Dalton committed perjury during his hearing. (Id. at 6.)  O'Callaghan claims there were no notes produced from the hearing, despite NYSE rules requiring note-taking, and that his request for production of the "NYSE examination reports" was refused. (Id.) He complains that only a "watered down" version of the charges was published and that a fuller report would have exposed the names of "the floor brokers who were paying cash for inside information" and "the whole scam." (Id. at 7.) He claims that defendants Murphy, Anthony, Dalton, Bruno, and Harnish prevented him from reviewing the 2005 decision, and that this is because the record would reveal "witness tampering, drug related activities, concealment of important information and violates [sic] the integrity of the marketplace." (Id.) O'Callaghan contends that his "mild sentence" was intended to make him "go away." (Id. at 8.)

9

Third, O'Callaghan alleges that the defendants violated RICO laws in the appeal of the NYSE decision to the SEC. He contends that the NYSE Division of Enforcement petitions contained "fraudulent, deliberately malicious statements that constitute Federal RICO violations." (Compl. at 9.)

The Court assumes that O'Callaghan seeks compensation for lost wages and future lost earnings. He states that his income as a broker was "approximately $2 million per year" and that he would have worked for many years if he had not been barred from the NYSE. He asserts that "these RICO violations stripped me of my ability to earn money, and label me in the Securities business for the rest of my working days." (Id. at 13.)

## DISCUSSION

The defendants move to dismiss O'Callaghan's complaint on four grounds: claim preclusion, lack of subject matter jurisdiction, failure to plead a RICO claim, and immunity. The defendants also request that the Court enjoin O'Callaghan from further litigation against the defendants and NYSE's current and former employees, and that he be required to pay the defendants' attorneys' fees.

## I.    The Preclusive Effect of O'Callaghan I

### A.  Dismissal Under the Doctrine of Claim Preclusion

Defendants assert that O'Callaghan I bars all claims in this case. (Def. Br. 9-12.) Federal law determines the preclusive effect of a federal judgment. Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2008). Claim preclusion, also known as *res judicata*, limits repetitious suits, establishes certainty in legal relations, and preserves judicial economy. Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). The doctrine applies in a later litigation "if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction,

(3) involved the same parties or their privies, and (4) involved the same cause of action." In re Adelphia Recovery Trust, 634 F.3d 678, 694 (2d Cir. 2011) (citations omitted). Subsequent litigation of related claims is precluded "even if based upon different theories or if seeking a different remedy." Giannone v. York Tape & Label, Inc., 548 F.3d 191, 194 (2d Cir. 2008) (citation omitted). "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000).

      **i.**      **A final decision on the merits**

      The holding from O'Callaghan I can be divided into two categories: those findings that qualify as a decision on the merits for claim preclusion purposes, and those that do not. The complaint in O'Callaghan I was dismissed in part for lack of subject matter jurisdiction. Dismissal for lack of subject matter jurisdiction is not a dismissal on the merits. 2B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (3d ed. 2012) ("Inasmuch as a Rule 12(b)(1) motion basically is one in abatement, a dismissal is not a decision on the merits and has no *res judicata* effect."). Judge Buchwald dismissed O'Callaghan's claims challenging his disciplinary proceeds on the ground that the statutory framework for SEC appeals grants the Court of Appeals exclusive jurisdiction to review an NYSE disciplinary proceeding. O'Callaghan I, at *5. Because Judge Buchwald found that she lacked subject matter jurisdiction, her dismissal of these claims was not on the merits. As such, the judgment regarding these claims falls outside the scope of claim preclusion. But see *infra* Point I(B).

      The remainder of the complaint in O'Callaghan I, however, raised claims that the suppression of evidence and unwarranted delays in O'Callaghan's disciplinary proceedings

amounted to a violation of due process. Judge Buchwald found that the NYSE and the NYSE defendants who were engaged in the hearing process – Niederhauer, Harnish, and Anthony – were protected from these claims by absolute immunity. O'Callaghan I, at *6. This holding reflected the position that the doctrine of absolute immunity extends to "private entities engaged in quasi-public adjudicatory and prosecutorial duties." D'Alessio, 258 F.3d at 105. In addition, Judge Buchwald found that O'Callaghan had not alleged a violation that rose to the level of a constitutional violation. As a result, she granted qualified immunity to the defendants who were engaged in investigative activities, Dalton and Bruno. O'Callaghan I, at *6. Finally, Judge Buchwald determined that recusal of an unnamed hearing officer was not required because O'Callaghan did not allege that the officer had any personal animus towards him or personal stake in the outcome. O'Callaghan I, at *7. That officer is Vincent Murphy, who is a defendant in this case. This portion of O'Callaghan I constitutes a decision on the merits for preclusive effect. See, e.g., Bryant v. U.S., 71 F. Supp. 2d 233, 237 (S.D.N.Y. 1999) (finding that a prior decision that was dismissed because the prosecutors were immune from liability constituted a final judgment on the merits).

### ii.    A court of competent jurisdiction

The Southern District of New York is plainly a court of competent jurisdiction to sustain the decision in O'Callaghan I.

### iii.    Same parties or their privity

Six of the seven defendants in this case were defendants in O'Callaghan I: the NYSE, Niederhauer, Harnish, Anthony, Bruno, and Dalton. Whether O'Callaghan I has preclusive effect as to the only new defendant in this case, Murphy, will depend on whether he is a "privy" of the other defendants.

12

The relevant question in a privity analysis for claim preclusion purposes is whether the interests of the non-party were adequately represented by the parties in the previous case. Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345-46 (2d Cir. 1995); Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 380 (S.D.N.Y. 1999) aff'd, 207 F.3d 105 (2d Cir. 2000). This inquiry looks beyond a traditional contractual privity analysis and instead examines whether the new defendant has "a sufficiently close relationship to the original defendant to justify preclusion." Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995). This is a flexible inquiry that considers the circumstances of each case. Compare Watson v. Mayo, 07 Civ. 54 (NRB), 2008 WL 538442 (S.D.N.Y. Feb. 26, 2008) (finding corrections officer to be in privity with co-employees named as defendants in prior action that asserted a claim based on same alleged facts) with Chase Manhattan Bank, 56 F.3d at 345-56 (finding that two parties, a buyer and a seller, while in contractual privity, were not in privity for the purposes of claim preclusion when their interests as plaintiffs against an asbestos corporation were substantially different). See also Akhenaten v. Najee, LLC, 544 F. Supp. 2d 320, 328-30 (S.D.N.Y. 2008).

An examination of Murphy's role and function at the NYSE indicates that he is in privity with his predecessor defendants. At the relevant time, defendant Murphy was an employee of NYSE Regulation, which is comprised of investigators, prosecutors, and hearing officers who pursue and adjudicate disciplinary actions within the NYSE. See NYSE Euronext website, NYSE Regulation Inc., http://usequities.nyx.com/nyse-regulation (last visited March 28, 2013). As an NYSE Hearing Officer, Murphy held a similar role as the O'Callaghan I defendants who performed a "quasi-judicial" function. See D'Alessio, 258 F.3d at 105. All NYSE Regulation defendants share an interest in ensuring that employees adhere to the disciplinary procedures of

the NYSE and that challenges are processed through the statutory procedure for appeal. Any rationale that granted other NYSE employees immunity because of their prosecutorial or judicial function would apply to Murphy as a hearing officer. Because Murphy's interests were aligned with those of the defendants in O'Callaghan I, he is in functional privity with them for the purposes of claim preclusion.

### iv.   Same cause of action

Finally, claim preclusion bars re-litigation of a claim that was already brought, as well as additional claims that arise out of the same facts as an earlier litigation. The specific legal theory advanced in a subsequent case is not dispositive; rather, the analysis compares the factual predicate between an earlier litigation and a present claim. Waldman, 207 F.3d at 110 ("[It is a] well-established rule that a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories."); Cameron v. Church, 253 F. Supp. 2d 611, 620 (S.D.N.Y. 2003) (finding that the determination as to whether a plaintiff is precluded by an earlier decision turns on "whether the claims arise from the same nucleus of operative fact" as the earlier litigation). A court looks to whether the underlying facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement (Second) of Judgments § 24(2) (1982); N.L.R.B. v. United Tech. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983).

In this inquiry, the emphasis is not what was litigated previously, but what could have been litigated. Cromwell, 94 U.S. at 351; Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ("Whether a claim that was not raised in the previous action could have been raised therein depends in part on whether the . . .  facts essential to support the second were present in the first.") (citing N.L.R.B., 706 F.2d at 1260). This approach encourages litigants to bring all

14

available claims in one action and prevents them from contesting a matter that they had a full and fair opportunity to litigate in a prior action. In re Teltronics, 762 F.2d at 193 ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*.")

A comparison between the facts in O'Callaghan I and this case reveals overlapping factual allegations. Here, O'Callaghan cites instances of suppression of evidence, perjury, and lack of access to documents during his disciplinary proceedings. (Compl. at 5-8.) In O'Callaghan I, Judge Buchwald examined these same allegations. O'Callaghan I, at *6. That these facts are now used to further a RICO claim instead of a federal due process claim does not overcome the weight of claim preclusion. Waldman, 207 F.3d at 110.

Additionally, the facts that appear for the first time in this case could have been pled in the previous case. O'Callaghan I, at *6. O'Callaghan claims that the insider trading took place between 2001 and 2009, (Compl. at 3), and does not indicate that these facts became known to him after the filing of his previous complaint on August 22, 2011. See Cameron, 253 F. Supp. 2d at 620-21 (dismissing a claim, in part because the conduct complained of in the second suit predated the earlier complaint); cf. Curtis, 226 F.3d at 139 ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit."). It is true that O'Callaghan initially filed his complaint in state court and therefore could not have pled a RICO violation because federal courts have exclusive jurisdiction for RICO claims. But when his case was removed to federal court, he was entitled to amend the complaint to bring any federal claims or risk abandoning them. 6 Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure, § 1483 (3d ed. 2012) (describing the amendment to Rule 15(a) to allow an

amendment to the complaint without leave of court after defendant successfully removes a case from state court).

For these reasons, I recommend that the Court dismiss any challenges to O'Callaghan's disciplinary proceeding – whether styled as a due process claim or as a RICO violation – under the doctrine of claim preclusion.

## B.  Dismissal Under the Doctrine of Issue Preclusion

Although claim preclusion does not apply to the dismissal of O'Callaghan's prior claims for lack of subject matter jurisdiction – because such decision is not "on the merits" for claim preclusion purposes – the specific question of jurisdiction cannot be reviewed again here. Issue preclusion, or collateral estoppel, applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity for litigation in the prior proceeding, and (4) the issues previously litigated were necessary to support a valid and final judgment on the merits." Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks and citation omitted).

The doctrine of issue preclusion precludes relitigation of issues determined in an earlier ruling on a jurisdictional question. Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case *res judicata* on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims."); see U.S., By Dept. of Def. ex rel. Pentagen Tech. Int'l, Ltd. v. CACI Int'l, Inc., 172 F.3d 39 (2d Cir. 1999) (finding that, where two complaints were factually identical apart from the addition of one plaintiff, a prior decision to dismiss for lack of subject

16

matter jurisdiction barred relitigation of that issue) (summary order); 18A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4436 (2d ed. 2012).

To the extent that O'Callaghan requests the Court to revisit the question of its jurisdiction to evaluate the integrity of his disciplinary proceedings, the Court could grant the motion to dismiss for lack of subject matter jurisdiction for the same reasons articulated in O'Callaghan I. But the Court need not do so. This issue was actually litigated and decided, there was a full and fair opportunity for litigation, and the issue previously litigated was necessary to support a valid and final judgment on the merits. Accordingly, further litigation on that question is barred under the doctrine of issue preclusion.

## II.     The Racketeering Influenced and Corrupt Organizations Act

As an alternative to dismissal under the doctrines of claim or issue preclusion, defendants argue that O'Callaghan's complaint should also be dismissed for lack of subject matter jurisdiction or for failure to state a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO").

### A.  Rule 12(b)(1)

Because a court cannot act if it lacks jurisdiction, a court must decide a 12(b)(1) motion before any other motion to dismiss. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (citing cases); Winn v. Schafer, 499 F. Supp. 2d 390, 394 (S.D.N.Y. 2007); 5B Wright & Miller, Federal Practice & Procedure § 1350 (3d ed. 2012). Under Rule 12(b)(1), a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the plaintiff's asserted basis for jurisdiction is insufficient.

The defendants' 12(b)(1) argument relies on the view that O'Callaghan's RICO claim is a shell to challenge the outcome of his disciplinary proceedings and subsequent sanctions. Because

17

O'Callaghan failed to follow the review process set up by 15 U.S.C. § 78y(a)(1), which requires that a direct appeal of SEC decisions be filed in a Court of Appeals, defendants argue this complaint, cloaked as a RICO claim, must be dismissed for lack of subject matter jurisdiction. Referencing Judge Buchwald's decision, in which she held that any challenge to the integrity of the disciplinary proceeding was unreviewable in a district court under 15 U.S.C. §§ 78s(d) and 78y(a)(1), defendants claim that "[t]he result here must be the same." (Def. Br. at 13.)

Construing the complaint in the light most favorable for O'Callaghan, the Court finds that this complaint cannot be dismissed in its entirety for lack of subject matter jurisdiction based on the reasoning from O'Callaghan I. This complaint, unlike its predecessor, asserts a RICO violation. Instead of directly challenging his disciplinary proceedings, O'Callaghan presents them as a cover-up and evidence of illegal behavior. Indeed, O'Callaghan insists in his opposition that "I mention my cases as examples of the dishonesty of the group (my case is settled)." (Pl. Opp. Br. at 4). He alleges that it is the insider trading, either alone or together with a cover-up, that constitutes a RICO violation.

Because federal district courts have exclusive jurisdiction over RICO cases, 18 U.S.C. § 1964(a), the defendants' motion to dismiss the complaint's RICO claim pursuant to 12(b)(1) should be denied.

### B.  Rule 12(b)(6)

In the alternative, defendants argue that O'Callaghan's complaint should be dismissed under Rule 12(b)(6) for failure to plead adequately a RICO claim. (Def. Br. at 15.) Defendants generally challenge the adequacy of this claim on proximate cause and predicate act deficiencies.

### i.      Standard of review

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555.) If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Pro se litigants "are entitled to a liberal construction of their pleadings," and therefore their complaints "should be read to raise the strongest arguments that they suggest." Green v. U.S., 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). But a pro se plaintiff's "attempts to satisfy RICO pleading requirements simply by reiterating a laundry list of predicate acts found in the statute or case law will not suffice." Toms v. Pizzo, 4 F. Supp. 2d 178, 183 (W.D.N.Y. 1998) aff'd, 172 F.3d 38 (2d Cir. 1998); Cohen v. Abrahams, 710 F. Supp. 981, 982 (S.D.N.Y. 1989) (dismissing a RICO claim because the pro se plaintiff's allegations were "entirely conclusory, and the complaint set[] forth no facts" that fulfilled the elements of the RICO statute).

In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or

incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

### ii.     The Elements of a RICO Claim

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect interstate . . . commerce, to conduct or participate, directly, or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1964(c); Hemi Group, LLC v. City of N.Y., 130 S. Ct. 983, 987 (2010). The RICO statute provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). To establish a violation of section 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." De Falco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citations omitted). A plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury. Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992).

What constitutes "racketeering activity" is limited to what the statute specifically defines as racketeering activity. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985); GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995). Section 1961 provides an exhaustive list of predicate acts that constitute "racketeering activity," and a plaintiff must allege that at least two such acts were committed within 10 years of each other. 18 U.S.C. § 1961(5). See also Sedima, 473 U.S. at 496 n.14 (interpreting the statutory language to say that two predicate acts is necessary (but not necessarily sufficient) evidence); accord Ray Larsen

20

Assocs, Inc. v. Nikko America, Inc, 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996).

### iii.    Failure to Plead Proximate Cause

Section 1964(c) provides a civil cause of action to persons injured "by reason of" a defendant's RICO violation. 18 U.S.C. § 1964(c). Implicit in this language is the requirement that the relationship between the act and the injury be stronger than a mere "but for" relationship. Holmes, 503 U.S. at 268. Instead, a plaintiff must allege "some direct relationship between the injury asserted and the injurious conduct alleged." Id. This proximate cause requirement aims, in part, to avoid speculation when determining damages caused by a remote action. "The less direct an injury is the more difficulty can arise when a court attempts to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." Holmes, 503 U.S. at 269.

Thus, in Holmes the Court addressed a RICO claim brought by the Securities Investor Protection Corporation (SIPC) against defendants whom SIPC alleged had manipulated stock prices. Id. at 262-63. SIPC had a duty to reimburse customers of certain registered broker-dealers in the event the broker-dealers were unable to meet their financial obligations. Id. at 261. When the conspiracy by the stock manipulators was detected, stock prices collapsed, and two broker-dealers were unable to meet their obligations to their customers. Id. at 262. SIPC, as insurer against that loss, ultimately was liable for nearly $13 million to cover the customers' claims. Id. at 263. The Court held that SIPC could not recover against the conspirators because it could not establish that it was injured "by reason of" the alleged fraud, as that phrase is used in RICO. Id. at 271; see also id. ("the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay

21

customers' claims"; thus the customers' harm is "purely contingent on" the harm suffered by the broker-dealers).

Similarly, in Anza, a business owner brought a RICO action against a competitor steel-mill company that committed tax fraud and used the proceeds to lower prices and attract more customers. Anza, 547 U.S. 451. The Court found that the defendant company could have lowered its prices for any number of reasons unconnected to fraud, and that the real victim of this conduct was the State of New York (which lost tax revenue) and not the plaintiff. Id. at 458. As such, the Court dismissed the RICO claim on causation grounds to avoid the "speculative nature" of the proceedings that would follow. Id. at 459.

In this case, the injurious conduct O'Callaghan alleges is a murky scheme of insider trading at the NYSE between October 2001 and May 2009 and a subsequent cover-up in the form of disciplinary proceedings. (Compl. at 3.) The injury O'Callaghan alleges is his termination from the NYSE that, he claims, aimed to silence him about the insider trading. O'Callaghan estimates his injury in terms of his lost wages, approximately $2 million per year. (Id. at 13.)

There is, however, no "direct relation" between the wrongful act of insider trading and the alleged injury to O'Callaghan. Holmes, 503 U.S. at 268. Similar to the sets of relationships involved in Holmes and Anza, O'Callaghan is not the direct victim of the insider trading he alleges occurred at the NYSE. In fact, he concedes as much in his papers: "RICO violations were perpetrated against the public and the stockholders of [NYSE Euronext]." (Pl. Opp. at 3.) To find a relationship between the alleged insider trading and O'Callaghan's termination and resulting lost earnings, the Court would engage in the speculative inquiry that the Supreme Court has sought to limit.

22

In addition, O'Callaghan's position that the brokers' desire to cover up their bad acts was the motivation for the disciplinary actions against him does not fill the gaps in the causal chain. The record indicates that the disciplinary proceedings that led to O'Callaghan's termination were a result of circumstances independent of any insider trading. A defendant's motivation in committing the alleged predicate acts is irrelevant to the proximate cause requirement. See Anza, 547 U.S. at 460 ("A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at competitor's expense.").

O'Callaghan has not alleged a direct relationship between the injury he suffered (termination of employment) and the wrongful act (insider trading). Thus, O'Callaghan has failed to fulfill the proximate cause requirement of the RICO statute.

### iv.    Failure to Plead a Predicate Act

#### (a) Private Securities Litigation Act

In 1995, the Private Securities Litigation Reform Act ("PSLRA") removed securities fraud from the list of predicate acts that can form the basis of a RICO claim. Previously, the RICO statute included "fraud in the sale of securities." But in 1995, Congress passed the PSLRA to amend 18 U.S.C. § 1964(c), which now reads: "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of § 1962." The PSLRA thus bars any RICO claim sounding in fraud if the claim could have been framed as securities fraud. OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 369 (S.D.N.Y. 2005) ("[P]laintiffs cannot avoid the PSLRA through artful pleading."). This is true "even where a plaintiff cannot itself pursue a securities fraud action against the defendant." MLSMK Inv. Co. v. JP Morgan Chase & Co., 651 F.3d 268, 277 (2d Cir. 2011). The purpose of the bar was to prevent litigants from pleading securities fraud cases as RICO cases,

23

with their threat of treble damages. <u>MLSMK</u>, 651 F.3d at 274 (citing <u>Bald Eagle Are Sch.</u>
<u>District</u>, 189 F.3d 321, 327-28) (quoting legislative history and explaining the purpose of the
PSLRA).

In the complaint, O'Callaghan alleges that "illegal activities" occurred and that there was
a "scheme" in which Member Trading Desks "[gave] insider information that they received from
Mutual Fund Trading Desks to N.Y.S.E. floor members in exchange for cash." (Compl. at 3.)
O'Callaghan has "no idea" how many floor brokers were involved in the scheme but predicts it
was "monumental." (<u>Id.</u> at 3). He says this amounted to a RICO violation "against the public and
the shareholders of [NYSE Euronext]," (Pl. Opp. Br. at 3), and that "an estimated $20 billion
was stolen from the public," (Compl. at 4).

Accordingly, O'Callaghan appears to base his RICO claim on the predicate acts of
securities fraud in the form of insider trading. His allegations suggest a violation of Rule 10b-5
of the Exchange Act, which prohibits the fraudulent use of material, non-public information in
connection with the purchase or sale of securities. <u>See</u> 15 U.S.C. § 78j(b). As a result, the
PSLRA requires dismissal of the plaintiff's RICO claim in its entirety. <u>See, e.g.</u>, <u>Thomas H. Lee</u>
<u>Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP</u>, 612 F. Supp. 2d 267, 281 (S.D.N.Y.
2009) (the PSLRA "bars private causes of action under RICO for predicate acts that describe
conduct that would otherwise be actionable as securities fraud"); <u>Boudinot v. Shrader</u>, 09 Civ.
10163 (LAK), 2012 WL 489215, at *5 (S.D.N.Y. Feb. 15, 2012) (dismissing RICO claims
contained in a complaint because they were based on alleged fraud in connection with the sale of
a security and therefore foreclosed by the PSLRA).

### (b) Additional RICO pleading requirements

More generally, the Court agrees with defendants that O'Callaghan has failed to allege the four requisite elements of a RICO claim. O'Callaghan's complaint alleges that a "series of unbelievable, malicious and fraudulent memoranda" was produced against him in order to "cover up another floor brokers scandal." (Compl. at 3.) O'Callaghan's complaint includes a lengthy description of his investigation and hearing in 2005. He challenges the original allegations and the failure of the Hearing Officer to produce notes from an "official meeting." (Id. at 5.) He claims that his 2005 trial was "rigged" and "the outcome predetermined," (id.), and that Pilovsky and defendant Dalton "committed several acts of perjury" at his hearing, (id. at 6). Finally, he alleges the existence of "tapes" involved in the hearing that "would have completely exonerated [him]" and would have exposed the "whole scam." (Id. at 7.)

To the extent that O'Callaghan means to argue, as the Court assumes, that coordinated, long-term insider trading forms the basis of his RICO claim, this pleading fails on multiple grounds. He does not state which statutory predicate acts he alleges were committed or caused him injury. Nevertheless, in order to give full opportunity to the *pro se* plaintiff, the Court considers two additional interpretations of O'Callaghan's claims.

First, it is possible that O'Callaghan provides this information simply as evidence of a "cover up" of the insider trading he alleges as a RICO violation. In his opposition, O'Callaghan states, "I mention my cases as examples of the dishonesty of the group (my case is settled)." (Pl. Opp. Br. at 4.) In that case, the relevance of these facts would fade as soon as the securities-based RICO violation fails under the PSLRA and the pleading requirements.

Second, it is possible that O'Callaghan means to allege that the actions around his disciplinary hearings form the basis of an independent RICO violation. In the complaint, he

describes the commencement of investigations against him under the heading, "RICO
Violation." (Compl. at 4.) If so, this category of claims is similarly unsuccessful for the
following reasons.

None of the four elements of a RICO claim is present in O'Callaghan's complaint. There
is no predicate act under § 1961(1) that brings a flawed disciplinary hearing into the RICO
statute and O'Callaghan does not suggest one. O'Callaghan does not indicate the offense
committed by each defendant. The clearest statements, "Dalton committed several acts of perjury
when testifying at my hearing," (id. at 6), and "Surveillance claimed there were no notes and
Murphy then ruled against me," (id. at 5), instead raise concerns that O'Callaghan indeed wishes
the Court to revisit the conduct of the disciplinary hearing itself. The Court has already found
that such claims are precluded by O'Callaghan I or that the Court lacks jurisdiction to consider
these claims.

Finally, O'Callaghan does not allege a clear injury to himself or his business as required
by 18 U.S.C. § 1962(c), instead insisting that the RICO violation was "perpetrated against the
public and the shareholders of [NYSE Euronext]." (Pl. Opp. Br. at 3.) As such, this statement
raises standing and proximate cause concerns. Section 11 of the Securities Act creates a right of
action for "any person" who acquires a security offered pursuant to a misleading registration
statement. 15 U.S.C. § 77k(a); In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 344
(S.D.N.Y. 2003). But O'Callaghan has not alleged that he owns any NYSE Euronext stock or
that he relied on NYSE Euronext Prospectus when purchasing shares. (Pl. Opp. Br. at 4.)

Because O'Callaghan has failed to plead the elements of a RICO violation and has not
established a direct relationship to his alleged injury, I recommend granting the defendants'
motion to dismiss on the alternative ground for failing to state a RICO claim.

26

**III.     Remaining Challenges to O'Callaghan's Disciplinary Proceedings**

Bearing in mind the myriad issues that O'Callaghan has brought to the Court's attention, as well as the difficulty in deciphering the exact claims in O'Callaghan's complaint, the Court considers the possibility that O'Callaghan has residual challenges to his disciplinary proceedings that remain unaddressed. In the interests of finality, the Court emphasizes that any remaining challenges that O'Callaghan has against these defendants arising out of his disciplinary proceedings are dismissed on immunity grounds.

Self-regulatory organizations and their employees are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities. Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 637 F.3d 112, 116 (2d Cir. 2011). The burden of demonstrating immunity lies with the party that asserts its entitlement to it. D'Alessio, 258 F.3d at 104. Courts evaluate the "nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229 (1988).

The NYSE has been granted absolute immunity for actions it takes pursuant to its quasi-governmental role in the regulation of the securities market. See, e.g., In re NYSE Specialists Sec. Litig., 503 F.3d 89 (2d Cir. 2007); D'Alessio, 258 F.3d at 104-06. Defendants emphasize that courts have been especially willing to recognize immunity in actions surrounding disciplinary functions because "allowing suits against the Exchange arising out [its] disciplinary functions would clearly stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Barbara v. N.Y. Stock Exch, Inc., 99 F.3d 49, 59 (2d Cir. 1996) (citations omitted). In addition, qualified immunity has been extended to officials functioning "more like investigators than as prosecutors." Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010).

27

All defendants here are protected from suits arising out of their disciplinary responsibilities of NYSE Regulation. The NYSE, Niederhauer, and those defendants involved in the quasi-adjudicatory and prosecutorial duties – Harnisch, Anthony, and Murphy – are protected by the doctrine of absolute immunity. Bruno and Dalton, as investigators for the NYSE, are protected by qualified immunity, which applies in the absence of a constitutional violation. See O'Callaghan I, at *7 ("Even construing what allegations he has made as liberally as possible, plaintiff has not plausibly alleged conduct rising to the level of a constitutional violation."). Because O'Callaghan has pled no new facts concerning Bruno and Dalton, the Court adopts the reasoning of Judge Buchwald to dismiss any remaining claims against the defendants concerning O'Callaghan's disciplinary proceeding on the grounds of qualified immunity.

## IV.     A Filing Injunction

Defendants request that the Court enjoin O'Callaghan from filing further lawsuits against these and other NYSE's current and former employees. (Def. Br. 17.) In light of the multiplicity of suits filed and the extensive judicial resources that have been extended to adjudicate this matter, the Court recommends that O'Callaghan be barred from filing any further actions in this Court without first obtaining permission from this Court. O'Callaghan may object to this injunction in a timely filed objection pursuant to Federal Rule of Civil Procedure 72. See Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam) ("The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard.").

## V.     Payment of Defendants' Attorneys' Fees and Costs.

Defendants' final request is that the Court order O'Callaghan to pay the attorneys' fees and costs incurred by the defendants. (Def. Br. 18.) They base their argument on the fact that

O'Callaghan filed multiple suits regarding the same issues, all of which failed. Defendants do not base their argument a statute or federal rule, but rather on the Court's inherent authority to sanction parties.

"Certain implied powers must necessarily result to our Courts of justice from the nature of their institution." U.S. v. Hudson, 11 U.S. 32, 34 (1812). A court's inherent power derives from the acknowledgment that "[c]ourts of justice are . . . vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 19 U.S. 204, 227 (1821). A primary aspect of courts' powers and discretion is the ability to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).

"Because of the potency of [a] court's inherent power, courts must take pains to exercise restraint and discretion when wielding it." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998). Due process imposes a limit on the power to impose sanctions, requiring that courts "provide notice and opportunity to be heard before imposing *any* kind of sanctions." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original); Mpounas v. U.S., 28 F. Supp. 2d 856, 861 (S.D.N.Y. 1998) (declining to impose sanctions because the Court had not made a prior formal warning to the petitioner).

Attorneys' fees may be awarded to a successful party, but the Court must find that the opposing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." F. D. Rich Co., Inc. v. U. S. for Use of Indus. Lumber Co., Inc., 417 U.S. 116, 129 (1974). The Court of Appeals for the Second Circuit has interpreted the bad faith standard "restrictively," requiring both "clear evidence" that the challenged actions are "entirely without color, and are taken for reasons of harassment," and "a high degree of specificity in the factual findings of lower courts."

Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (citing cases). See also Truong v. Hung Thi Nguyen, 11 Civ. 3248, 2012 WL 5860512, at *2 (2d Cir. Nov. 20, 2012) (imposition of financial sanctions under a court's inherent powers requires "a specific finding that [a party] acted in bad faith") (citation omitted).

This is the third case brought by O'Callaghan that this Court has dismissed. The first, which O'Callaghan brought against the lawyers who represented him in the disciplinary proceedings, was dismissed for lack of subject matter jurisdiction on September 14, 2012. O'Callaghan v. Goodman, 12 Civ. 5771 (WHP), (S.D.N.Y. Sep. 14, 2012) (Henkin Aff. at Exh. D). O'Callaghan then filed two cases in state court against the NYSE and its employees; these were removed by defendants to federal court and consolidated by Judge Buchwald, who dismissed them both. O'Callaghan v. N.Y. Stock Exch., 11 Civ. 6331 (NRB), (S.D.N.Y. Aug. 14, 2012). O'Callaghan then filed this case in federal court directly and invoked a federal statute.

Although the number of suits brought by O'Callaghan has caused the Court and the defendants to expend extensive resources, there is no "clear evidence" that this behavior requires sanctions. Oliveri, 803 F.2d at 1272. There are no facts to suggest that O'Callaghan's sole purpose was to harass the defendants or that he brought this case in bad faith. Nor does his behavior resemble that of the *pro se* plaintiffs sanctioned in Sassower v. Field, 973 F.2d 75 (2d Cir. 1992), cited by defendants. In that case, the plaintiffs made unsupported bias recusal motions; personal attacks on opposing parties and counsel; two "improper" interlocutory appeals that were later withdrawn; and "a mammoth motion for a new trial . . . which s[ought] to reargue virtually every aspect of the litigation for the third time." Sassower, 973 F.2d at 78. Indeed, this Court has demonstrated that imposing financial sanctions is an extraordinary remedy by maintaining a high bar for its application. Even where the Court found that *pro se* plaintiffs'

conduct came "perilously close to the situation presented in the <u>Sassower</u> case," it declined to impose fees and costs on the plaintiffs, choosing instead to place them "on notice" that they could be subject to sanctions if improper litigation practices continued. <u>Scott v. Dime Sav. Bank of New York, FSB</u>, 88 Civ. 2298 (PKL), 1993 WL 330439, at *5 (S.D.N.Y. Aug. 23, 1993).

Imposition of financial sanctions is improper where, as here, the Court cannot articulate evidence of bad faith with any specificity. <u>Oliveri</u>, 803 F.2d at 1272. Instead, the Court finds that the injunction recommended *supra* is the proper remedy in this case. It will insert a procedural safeguard against further litigation by O'Callaghan and will provide repose for the defendants.

## CONCLUSION

For the reasons discussed above, the motions to dismiss under Rule 12(b)(1) brought by the defendants should be DENIED as to the federal RICO claims and GRANTED as to any challenges to plaintiff's disciplinary proceedings. The motion to dismiss all claims under Rule 12(b)(6) should be GRANTED. Ordinarily the Court would grant a *pro se* litigant leave to amend his pleading "when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Shomo v. City of N.Y.</u>, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). Leave need not be granted, however, where amendment would be futile. <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000). In light of the Court's comprehensive review of O'Callaghan's claims, and the number of times he has unsuccessfully filed related claims in the state and federal courts, I recommend that the Court exercise its discretion and decline to grant leave to amend.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).


**SO ORDERED.**




New York, New York
March 28, 2013

32